PATTERSON, Chief Justice,
for the Court:
This is an appeal from a will contest in the Chancery Court of Adams County, where a jury found for the contestant, John R. Watts, invalidating the last will and testament of Martha Watts Guthrie.
This case involves the descendants of Dr. and Mrs. John Watts of Natchez who had two children: Martha, the testatrix here, born in approximately 1902; and a son. Martha was married several times but had only one child, who predeceased her without issue. However, Martha’s brother had a son, Dr. John R. Watts, the contestant of the will, who married and had children. At the time pertinent to this suit, the entire Watts family consisted of “Aunt Martha” Watts Guthrie; her nephew and niece-in-law, Dr. John R. and Margaret Bennett Watts; and their children, John Bayard, Margaret and Anna.
For many years Martha Guthrie, the testatrix, lived alone in downtown Natchez in the house where her father, John Watts’ grandfather, had lived and practiced dentistry. She was known in the community as an accomplished interior decorator but a rather careless businesswoman who often breached contracts with her customers. Mrs. Guthrie had several close friends, but relations with her family were frequently strained due to her personality quirks.
In 1969 a radiologist at the Street Clinic in Vicksburg, Mississippi, diagnosed Mrs. Guthrie as having arteriosclerosis. At that time and for several years thereafter she experienced a drinking problem which periodically required hospitalization.
In January 1981, Mrs. Guthrie consulted Dr. John R. Shell of the Street Clinic in Vicksburg. After performing a biopsy, Dr. Shell informed Mrs. Guthrie she had inoperable cancer of the liver. Mrs. Guthrie replied she desired to undergo chemotherapy at the Street Clinic but that she would first go home to Natchez to sell her house and get her affairs in order.
Mrs. Guthrie returned home and notified two of her friends, Ruth Beltzhoover and Leona Dawes, of Dr. Shell’s diagnosis. According to Mrs. Dawes, she and Mrs. Guthrie thereafter began an inventory of Mrs. Guthrie’s extensively furnished house in anticipation of selling it. In carrying out the inventory, Mrs. Guthrie was “as sharp as a tack,” according to Mrs. Dawes. “She knew exactly where she had bought them [the furnishings] and when she had bought them.”
In February, Mrs. Guthrie had three conferences with Natchez attorney Thomas McNeely. He testified, “She said that she wanted to leave the property to the Street Clinic and I asked her why and she said that she had been brought up to the Street Clinic in Vicksburg for many years throughout her life and that she knew the doctors up there and she was on a personal as well as business relationship with them ... [T]hey had a good unit up there especially for the terminally ill and ... she hoped that she would go up there during the last days of her life. She wanted to leave all of the property to the Street Clinic.”
At the second conference on February 17, McNeely phoned the Street Clinic and was informed by Mr. Robert Quimby the proper legal designation for the Street Clinic was “The Street Medical Foundation.” McNeely then prepared Mrs. Guthrie’s will, leaving her entire estate to the Street Medical Foundation. Mrs. Guthrie executed this will on February 19.
By the end of February, Mrs. Guthrie’s condition had greatly deteriorated. On February 27, Mrs. Dawes and Margaret Watts, the wife of Dr. John R. Watts, went to visit Mrs. Guthrie and found the house in a deplorable condition with garbage, newspapers, and spoiled food covering the floor. Mrs. Guthrie, dehydrated and incoherent, had been lying on a couch in the living room “for about a week,” according to Margaret, and had apparently been unable to attend to her personal needs. Margaret summoned Dr. Homer Whittington, a *821 Natchez physician who had treated Mrs. Guthrie intermittently since 1973. After Dr. Whittington arrived, an ambulance was called and Mrs. Guthrie was taken to the Natchez Community Hospital. Aware that Mrs. Guthrie wished to spend her last days at the Street Clinic, Margaret phoned the Clinic but was advised not to attempt to transport her aunt to Vicksburg. Subsequently, Dr. John Watts made several calls to the Street Clinic which he testified were unreturned.
Mrs. Guthrie’s condition worsened steadily, and she died on March 14. Her will of February 19, 1981, was admitted to probate, and Dr. Watts instituted proceedings to have the will declared void on the grounds of lack of testamentary capacity and undue influence. Near the conclusion of the hearings, after each party had presented its case in chief and the proponent had completed its rebuttal testimony, the court permitted Dr. Watts to amend his pleadings to conform to the evidence. Dr. Watts then alleged that the document was not the will of the decedent in that it named a beneficiary (The Street Medical Foundation) different from that selected by the decedent (The Street Clinic), which were in fact two separate and distinct corporate entities.
At trial the court granted the following instruction requested by the contestant:
You are instructed that if you believe from the evidence that Tom MeNeely called and talked with Mr. Quimby, an officer of Street Medical Foundation, who at that time was in Vicksburg, and asked him the correct name of the Street Clinic to which Mr. Quimby replied that it was the Street Medical Foundation, and because thereof Street Medical Foundation was made the beneficiary of the will in contest, and if you further believe that because thereof such reported will was not the will of the deceased then you are duty bound under your oaths to find for the contestant, Dr. John Watts.
We are of the opinion the granting of this instruction was error in a trial on the issue of devisavit vel non. The instruction addressed the issue of whether the Street Medical Foundation was entitled to the devise in Mrs. Guthrie’s will, or whether the Street Clinic was the proper beneficiary. It did not pertain to the primary issue presented to the jury of the testamentary capacity of the testatrix. This question should have been passed for a subsequent proceeding in the event the will was upheld on the issue of devisavit vel non. Genna v. Harrington, 254 So.2d 525, 527 (Miss.1971).
Additionally, the instruction was peremptory. Because the facts set forth in the instruction were uncontradicted in the record, the instruction obligated the jury to find for the contestant on uncontradicted facts. For this reason the verdict of the jury very probably was based upon an improperly granted peremptory instruction. Admittedly, it could have been based upon the issue of devisavit vel non, or any other point raised at the trial. However, the likelihood exists the issue of devisavit vel non was never considered by the jury which requires reversal.
In cases such as this will contest where more than one ground is asserted challenging the validity of the will, the court should require the jury to return a special verdict as authorized by Rule 49(b) of the Mississippi Rules of Civil Procedure. This practice would enable this Court to determine the true verdict of the jury and render its opinion in accord with that verdict.
REVERSED AND REMANDED.
WALKER, and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.